UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BLUE CASTLE (CAYMAN) LTD.,

Plaintiff,

-against-

YOLANDA MORRIS; CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; UNIFUND CCR, LLC; MOOI RIVER LLC; and "JOHN DOE" and "JANE DOE," the last two names being fictitious and unknown to plaintiff, the persons or parties intended being the Tenants or occupants, if any, having or claiming an interest in or lien upon the subject premises described in the complaint,

Defendants.

---

REPORT AND RECOMMENDATION

No. 24-CV-8785-NCM-JRC

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Blue Castle (Cayman) Ltd. ("plaintiff") brings this foreclosure action against defendants Yolanda Morris ("Morris"), City of New York Environmental Control Board, City of New York Department of Transportation Parking Violations Bureau, New York State Department of Taxation and Finance, Unifund CCR, LLC, and MOOI River LLC (collectively, "defendants"), pursuant to New York's Real Property Actions and Proceedings Law ("RPAPL"), Article 13. *See* Compl. ¶ 1, Dkt. 1. Plaintiff seeks damages, attorneys' fees and costs, and a judgment of foreclosure and sale. *Id*. at Wherefore Clause; Prop. J., Dkt. 23-21; [proposed] Judgment of Foreclosure and Sale, Dkt. 23-7; *see generally* Mem. of Law in Supp. of Pl.'s Mot. for Default J. ("Pl.'s Mem."), Dkt. 23-20. Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted the

default of the defendants on July 14, 2025. *See* Clerk's Entry of Default, Dkt. 21.

Currently pending before this Court, on a referral from the Honorable Natasha C. Merle, is plaintiff's motion for default judgment. *See* Order Referring Mot. dated Sept. 16, 2025; Mot. for Default J., Dkt. 23. For the reasons set forth below, this Court respectfully recommends granting the motion and awarding plaintiff damages and additional relief as described below.

**Relevant Factual and Procedural Background**

The following facts are drawn from plaintiff's Complaint, supporting affidavits, and accompanying exhibits, and are accepted as true for purposes of this motion. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–89 (2d Cir. 2015).

Plaintiff brought this diversity action to foreclose on a mortgage encumbering 219-22 141st Road, Jamaica, New York 11413 in Queens County (the "Subject Property"). *See* Compl. ¶ 1. Plaintiff alleges that it is a citizen of the Cayman Islands and the State of Florida. *See id.* ¶ 2.

On September 16, 2003, defendant Morris executed and delivered a promissory note in the principal amount of $223,000.00, plus interest (the "Note"), secured by a mortgage on the Subject Property (the "Mortgage"), to IndyMac Bank, F.S.B. *See* Compl. ¶ 13; Note, Dkt. 1-5; Mortgage, Dkt. 1-6. On the same day, Morris executed and delivered the Mortgage to IndyMac Bank, F.S.B., as mortgagee, which was duly recorded in the Office of the City Register for Queens County, on January 7, 2004. *See* Compl. ¶ 14; Mortgage, Dkt. 1-6. Thereafter, the Mortgage was ultimately assigned to plaintiff. *Id.*

On July 31, 2012, Morris duly executed and delivered to IndyMac Mortgage Services, a division of OneWest Bank, FSB and all of its successors in interest a Loan Modification

Agreement (the "Modification Agreement") whereby Morris, among other things, assumed and reaffirmed all obligations of the underlying Note and Mortgage and modified the unpaid principal balance of the Note to the sum of $240,912.59 as of September 1, 2012. Compl. ¶ 15; Loan Modification Agreement, Dkt. 1-7.

On December 24, 2024, plaintiff commenced this action alleging, *inter alia*, that Morris had failed to make payments in accordance with the terms of the Mortgage and Note. *See* Compl., Dkt. 1. Plaintiff also named the nominal defendants, alleging that they hold liens on the Subject Property that are subordinate to plaintiff's Mortgage. Compl. ¶¶ 4–8.

Morris was served with the Summons and Complaint on April 4, 2025, and the nominal defendants were served in January 2025. *See* Dkt. 13; *see also* Dkts. 6–10. Plaintiff properly served Morris by personally serving copies of the Complaint and Summons at the Subject Property on Morris. *See* Fed. R. Civ. P. 4(e)(2)(a). On July 14, 2025, the Clerk of the Court entered a Certificate of Default against defendants after they failed to respond to the Complaint. *See* Dkt. 21. To date, defendants have not appeared or moved to vacate the entries of default.

On September 15, 2025, plaintiff filed the instant motion for default judgment. *See* Dkt. 23. By the instant motion, plaintiff seeks to recover: (1) $302,883.89 in outstanding principal; (2) interest through September 15, 2025 in the amount of $42,344.28 and at the rate of $18.67 per day until the entry of judgment; (3) unpaid late fees of $483.30; (4) escrow advances (*i.e.*, loan charges or advances) in the amount of $25,467.54; (4) attorneys' fees in the amount of $17,060.00; and (5) costs in the amount of $4,359.96. *See* Decl. of John Ramer in Supp. of Mot. For Default J. ("Ramer Decl."), Dkt. 23-8 at ¶ 28; Decl. of Michael J. Gargiulo in Supp. of Attorneys' Fees ("Att'y Fee Decl.") ¶¶ 7–8, Dkt. 23-19. Plaintiff further requests the appointment of a Referee to effectuate the sale and disburse the funds from such sale. *See*

[Prop.] J. of Foreclosure and Sale, Dkt. 23-7. In support of the motion, plaintiff submitted a declaration, along with a copy of defendant Morris' payment history and other payment and billing business records.

At a hearing held on the instant motion on June 30, 2026, defendants failed to appear despite being served with notice of the hearing. *See* Min. Entry dated 6/30/2026; Cert. of Service, Dkt. 25. On July 31, 2026, plaintiff supplemented its motion. Dkt. 28.

## Discussion

### I. Standing

Since plaintiff is not an original party to the Note, this Court will first address plaintiff's standing to bring this foreclosure action. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*."). "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)). "[E]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *Id.* (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (3d Dep't 2015)).

Here, plaintiff alleges, and submits documentation to establish, that it has been in possession of the Note and has been assigned the Note and Mortgage, which assignment was recorded on September 15, 2023. *See* Ramer Decl. ¶¶ 10–11, Dkt. 23-8 at ECF page[1] 3; Assignment of Mortgage, Dkt. 1-6 at ECF page 31; Dkt. 23-12. Plaintiff has provided copies of the Note and Mortgage as exhibits to the Complaint. *See* Note, Dkt. 1-5; Mortgage, Dkt. 1-6. Since plaintiff has submitted uncontroverted evidence that it held the Note and Mortgage when it commenced this action on December 24, 2024, this Court finds that plaintiff has standing to pursue this action. *See Thompson*, 631 F. App'x at 15–16; *Blue Castle (Cayman) LTD v. 1767 TP Ave LLC*, No. 22-CV-9577, 2024 WL 4135194, at *4 (S.D.N.Y. Sept. 10, 2024) ("Attachment of the Note as an exhibit to the Complaint was sufficient to establish standing since it demonstrated that the plaintiff was in physical possession of the [N]ote at the time the action was commenced.") (internal quotation marks and citation omitted); *JXB 84 LLC v. Khalil*, No. 15-CV-6251, 2017 WL 1184001, at *3 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1184141 (E.D.N.Y. Mar. 29, 2017).

## II. Legal Standards

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil*, 10 F.3d at 95–96. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotation marks and citations omitted).

**III. Pre-Foreclosure Procedures**

Article 13 of the RPAPL provides for certain requirements that must be complied with in a foreclosure action, even in federal court. *See, e.g., Windward Bora LLC v. Durkovic as Tr. of McQueen Fam. Tr.*, No. 22-CV-411, 2024 WL 3455841, at *4–5 (E.D.N.Y. July 18, 2024); *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 333–34 (E.D.N.Y. 2024). Section 1303 requires the plaintiff to serve a specific notice on the defendant, with the summons and complaint. *See* RPAPL § 1303. Section 1304 requires that plaintiff serve an additional notice at least ninety days before commencing a foreclosure action.

*See id.* § 1304(1). That notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2). RPAPL § 1306 requires that plaintiff file certain information with the Superintendent of Financial Services, within three business days of mailing the notice required by section 1304.[2] *See* RPAPL § 1306. Plaintiff is also required to serve a special summons once the foreclosure action is filed. *See* RPAPL § 1320. Finally, RPAPL § 1331 requires that plaintiff file a notice of pendency of the action, as well as a copy of the complaint, in the clerk's office of the county where the subject property is located. *See* RPAPL §§ 1331, 6511(a) ("Unless it has already been filed in that county, the complaint shall be filed with the notice of pendency.").

The Court finds that plaintiff has complied with each of the statutory requirements. First, plaintiff's process server avers that he served on Morris the notice required by section 1303 with the Summons and Complaint, and the notice attached to the Complaint complies with the requirements contained in section 1303. *See* Summons Returned Executed, Dkt. 13. Plaintiff has also submitted a Proof of Filing Statement from the New York State Department of Financial Services stating that plaintiff filed the information required by section 1306 on September 16, 2024. *See* Proof of Filing Statement, Dkt. 23-15. Plaintiff's process server further avers that he served the special summons required by section 1320 on Morris, and the summons submitted contains the content required by section 1320. *See* RPAPL 1320 Notice, Dkt. 1-10. Plaintiff has also established compliance with section 1304(2)'s requirement that the 90-day notice be mailed

[2] Section 1306(2), in turn, requires that "[e]ach filing delivered to the superintendent shall be on such form as the superintendent shall prescribe, and shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue." RPAPL § 1306(2).

to the borrower. *See* Dkt. 23-13. Finally, plaintiff has demonstrated that it filed the Complaint with the Notice of Pendency in the Queens County Clerk's Office. *See* Notice of Pendency, Dkt. 23-5.

Section 3012-b(a) of the C.P.L.R. requires that a plaintiff seeking foreclosure on a residential home attach to the complaint "a certificate, signed by the attorney for the plaintiff, certifying that the attorney has reviewed the facts of the case and that . . . to the best of such attorney's knowledge, information and belief there is a reasonable basis for the commencement of such action." C.P.L.R. § 3012-b(a). Plaintiff filed the required certificate with the Complaint. *See* Certificate of Merit, Dkt. 1-8. Plaintiff, therefore, has now demonstrated its compliance with New York's statutory foreclosure requirements.

## IV. Mortgage Foreclosure

### A. Applicable standards

Under New York law, "[t]o foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage; (2) ownership of the mortgage; and (3) the defendant's default in payment on the loan [secured by the mortgage]." *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Kings Cnty. Pub. Admin.*, No. 22-CV-7925, 2023 WL 7169000, at *3 (E.D.N.Y. Sept. 13, 2023) (internal citation and quotation marks omitted), *report and recommendation adopted*, 2023 WL 7167515 (E.D.N.Y. Oct. 31, 2023); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Robedee*, No. 22-CV-809, 2022 WL 18284844, at *4 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted*, 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022). Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has established a *prima facie* entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence. *See Wilmington PT Corp. v. Tiwana*, No. 19-CV-2035, 2023 WL 4673777, at *7 (E.D.N.Y. June

12, 2023); *Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3.

**B. Plaintiff is entitled to foreclosure**

Here, the allegations in the Complaint, as well as the evidence submitted in support of plaintiff's motion, establish that plaintiff is entitled to foreclosure. Plaintiff has produced copies of the Note, Mortgage, and assignments, thereby establishing the borrower's obligations arising thereunder. The Note, Mortgage, and accompanying documents establish the existence of a debt owed by the borrower, and plaintiff's ownership of the Note and Mortgage. *See Wilmington Sav. Fund Soc'y, FSB as Tr. for Carlsbad Funding Mortg. Tr. v. White*, No. 17-CV-2288, 2022 WL 5432771, at *8 (E.D.N.Y. July 27, 2022) (finding that the plaintiff had "the right to enforce the . . . [m]ortgage" when it had "demonstrated possession of the [n]ote and accompanying [m]ortgage prior to the commencement of the instant action [and] ha[d] produced . . . all relevant assignment documents"), *report and recommendation adopted as modified*, 2022 WL 4235326 (E.D.N.Y. Sept. 14, 2022); *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (finding that "copies of the Mortgage, Note, allonges, and chain of assignments" was "evidence . . . that establishes a *prima facie* case of entitlement to judgment"). Plaintiff also has established that the borrower defaulted by failing to make the required monthly payments beginning October 1, 2024 (*see* Ramer Decl. ¶ 24; Compl. ¶ 17). *See Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309, 2023 WL 8473948, at *3 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023); *Bent*, 321 F. Supp. 3d at 415 (finding that affidavit stating that "defendant . . . failed to cure the default" was sufficient proof of borrower's default). Morris' default triggered plaintiff's right to accelerate the loan and to require full payment of the principal amount outstanding. *See* Compl. ¶ 17; Note, Dkt. 1-5; Mortgage, Dkt. 1-6.

Because defendants have not answered the Complaint or otherwise opposed the instant motion, they have failed to rebut plaintiff's *prima facie* case showing that it is entitled to foreclosure. *See Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3; *Sec'y of U.S. Dep't of Hous. & Urb. Dev. V. Nassau Cnty. Pub. Admin. As Admin. Of the Estate of Ella Mae Key a/k/a Mae Key, Deceased*, No. 19-CV-3547, 2023 WL 2421676, at *7 (E.D.N.Y. Feb. 9, 2023).

**C. Other subordinate lienholders**

Plaintiff names the City of New York Environmental Control Board, City of New York Department of Transportation Parking Violations Bureau, New York State Department of Tax and Finance, Unifund CRR, LLC, and Mooi River LLC as subordinate lien holders. Plaintiff alleges that the nominal defendants have claimed or may claim to have "some interest in or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage." Compl. ¶ 10.

Section 1311 of the RPAPL requires that the necessary parties to a mortgage foreclosure action include "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). "This rule 'derives from the underlying objective of foreclosure actions – to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (quoting *NC Venture I, L.P. v. Complete Analysis, Inc*., 803 N.Y.S.2d 95, 97–98 (2d Dep't 2005)). Default judgment is appropriate against such a defendant where the complaint alleges "nominal liability," *i.e*., that any judgments or liens a defendant may have against the property are subject and subordinate to plaintiff's lien. *See E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501, 2014 WL 4804872, at *7 (E.D.N.Y. Sept. 10,

2014), *report and recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014). "When a default judgment is entered against a defendant with a 'nominal interest' in the property, any such interest in the relevant property is terminated." *Windward Bora LLC v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (internal citation omitted).

Plaintiff has properly served the nominal defendants with the Summons and Complaint, as well as the motion for default judgment. *See* Dkts. 6–10, 23-22. These defendants have not challenged the claim that their interests are subordinate to plaintiff. Courts consistently find unopposed allegations that a defendant is a holder of a subordinate lien to be sufficient to enter default judgment against the defendant. *See Eastern Sav. Bank, FSB v. Strez*, No. 11 Civ. 1543, 2013 WL 6834806, at *6 (E.D.N.Y. Dec. 20, 2013); *Eastern Sav. Bank, FSB v. Bright*, No. 11 Civ. 1721, 2013 WL 3282889, at *2 (E.D.N.Y. Mar. 21, 2013), *report and recommendation adopted by* 2013 WL 3282889, at *1 (E.D.N.Y. June 27, 2013); *E. Sav. Bank, FSB v. Beach*, No. 13-CV-0341, 2014 WL 923151, at *8 (E.D.N.Y. Mar. 10, 2014).

Based on plaintiff's unopposed allegations, the Court recommends finding that the City of New York Environmental Control Board, City of New York Department of Transportation Parking Violations Bureau, New York State Department of Tax and Finance, Unifund CCR, LLC, and Mooi River LLC are necessary parties in this matter and that the Court should enter default judgment against them. *See E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *4 (E.D.N.Y. May 9, 2016), *report and recommendation adopted*, No. 13-CV-7308, 2016 WL 3102021 (E.D.N.Y. June 2, 2016) (recommending default judgment be entered against nominal defendants based on plaintiff's unopposed allegations).

Accordingly, this Court respectfully recommends **granting** plaintiff's motion for default judgment as discussed further below.

## V. Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc*., 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment") (alterations in original, internal quotation marks omitted); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default judgment).

For the reasons set forth below, this Court concludes that a hearing on the issue of damages is unwarranted and respectfully recommends awarding plaintiff relief as discussed below.

### A. Outstanding Principal

Plaintiff requests recovery of a principal balance of $302,883.89. *See* Ramer Decl. ¶ 27. Pursuant to the terms of the Loan Modification Agreement, Morris agreed to pay $326,654.51 in principal. Loan Modification Agreement ¶ 3(B), Dkt. 1-7 at ECF pages 2, 4. The terms of the

loan provide that in the event of the borrower's default, plaintiff is entitled to the full amount of the outstanding loan principal. *See* Mortgage ¶ 22, Dkt. 1-6 at ECF page 14. As set forth in the Ramer declaration, and supported by plaintiff's data compilations, Morris failed to make payments on the unpaid principal balance of $302,883.89 ($189,779.76 + $113,104.13), as of September 15, 2025. *See* FCI Lender Servicer's, Inc's Business Records, Dkt. 23-17 at ECF pages 2–5; *see also HSBC Bank USA, Nat'l Ass'n as Tr. for Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2007-OA2 Mortg. Pass-Through Certificates v. Fenelon*, No. 24-CV-07716, 2025 WL 3546115, at *8 (E.D.N.Y. Dec. 9, 2025); *Durkovic*, 2024 WL 3455841, at*7; *McLain*, 2023 WL 8473948, at *5. The Court, therefore, recommends awarding plaintiff **$302,883.89** for the unpaid principal balance.

**B. Interest**

Plaintiff requests interest on the interest-bearing portion of the unpaid principal balance from May 1, 2019 through September 15, 2025. *See* Ramer Decl., Statement of Amount Due and Owing, Dkt. 23-8 at ECF page 9. The terms of the Loan Modification Agreement provide that interest accrues on the "Interest Bearing Principal Balance" at a rate of 3.5 percent per year after August 1, 2018. *See* Loan Modification Agreement ¶ 3(C), Dkt. 1-7 at ECF page 4.[3] Applying the 3.5 percent annual interest rate to the unpaid interest-bearing principal balance of $189,779.76, interest accrues at a rate of $18.20 per day (($189,779.76 x 3.5 percent) / 365 days). *See id.* Accordingly, based on the Court's calculations, the Court recommends awarding

[3] As discussed above, under the terms of the Loan Modification Agreement, the new principal balance on the loan became $326,654.51. Loan Modification Agreement, Dkt. 1-7 at ECF page 4. Of that principal balance outstanding, $113,104.13 was treated as a non-interest bearing principal forbearance. *Id.* Thus, the interest-bearing principal balance at the time of the loan modification was $213,550.38. *Id.* As of the filing of the motion for default judgment and as set forth in the Ramer declaration, the unpaid interest-bearing principal balance totaled $189,779.76. FCI Lender Servicer's, Inc's Business Records, Dkt. 23-17 at ECF page 2.

plaintiff **$42,406** in interest from May 1, 2019 through September 15, 2025 ($18.20 x 2,330 days), plus additional interest at the rate of **$18.20** per day from September 16, 2025 until the entry of judgment.

### C. Escrow Advances and Property Inspection Fees

Plaintiff seeks to recover escrow advances totaling $24,769.54 (*i.e.*, $12,252.80 in "Prior Servicer Escrow Advances," $2,332.47 in insurance disbursements, $3,220.00 in "Prior Servicer Corp Adv Balance," and $6,964.27 in "Prior Servicer Other Fees"). *See* Ramer Decl. ¶ 28; FCI Lender Servicer's, Inc's Business Records, Dkt. 23-17 at ECF page 4; Compl. ¶ 21. In addition, plaintiff seeks to recover $698 in property inspection fees. *Id.* The combined escrow advances and property inspection fees total $25,467.54. Ramer Decl. ¶ 28; FCI Lender Servicer's, Inc's Business Records, Dkt. 23-17 at ECF page 4. The Mortgage provides that Morris is required to pay with each monthly payment, "escrow items," including, "taxes, assessments, water charges" and "hazard or property insurance covering the Property." Mortgage ¶¶ 3, 4, Dkt. 1-6. Morris further agreed that "[i]f, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due . . . I will pay to Lender whatever additional amount is necessary to pay the Escrow items." *Id.* Moreover, Morris agreed that if she fails to make insurance payments, "Lender may obtain insurance coverage, at Lender's option and [borrower's] expense. . . . Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument . . . [and] will bear interest at the interest rate set forth in the Note." *Id.* ¶ 5. In addition, the Mortgage provides that plaintiff "may charge [Morris] fees for services performed in connection with [Morris'] default, for the purpose of protecting Lender's interest in the Property . . . including, but not limited to, attorneys' fees, property inspection and valuation fees." *Id.* ¶ 14.

Plaintiff provides a "Loan Master Report," with a breakdown of itemized charges and payments that make up the escrow balance, including those payments made by plaintiff. *See* Account History, Dkt. 23-16; *see also* Dkt. 23-17. Plaintiff has sufficiently demonstrated that it is entitled to recover the cost of insurance and taxes that it paid related to the Subject Property in the amount of $24,769.54.

In addition, plaintiff has submitted a list of the individual property inspections and corresponding charges. *See generally* Dkt. 23-16; *see also* Dkt. 23-17.

In sum, since plaintiff has corroborated its request for these costs with a declaration and the relevant business records, the Court recommends granting the amount sought of **$24,769.54** in escrow advances and **$698** in property inspection fees for a total of $25,467.54. *See ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417, 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022).

**D. Unpaid Late Fees**

Plaintiff seeks late fees totaling $483.30 from the period June 2019 through November 2021. Ramer Decl. ¶ 28; *see also* Dkt. 23-8 at ECF page 9; FCI Lender Servicer's, Inc's Business Records, Dkt. 23-17 at ECF pages 2–4. The Note specifies that plaintiff is entitled to a late fee equaling up to two percent of each payment not received within fifteen days of the due date. Note ¶ 7(A), Dkt. 1-5 at ECF page 3 ("If the Note Holder has not received the full amount of my monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000% of my overdue payment of principal and interest."). Each monthly payment was $805.53. FCI Lender Servicer's, Inc's Loan Master Report, Dkt. 23-16 at ECF page 2–3. Each monthly late fee was $16.11 and Morris incurred a fee over a 30-month period for a total of $483.30 in late fees. *See* FCI Lender

Servicer's, Inc's Business Records, Dkt. 23-17 at ECF page 2–4. Accordingly, the Court recommends awarding plaintiff **$483.30** in unpaid late fees.

## VI. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees in the amount of $17,060 and $4,359.96 in costs. *See* Att'y Fee Decl. ¶¶ 7–8, Dkt. 23-19. A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award. *See Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *5; *Onewest Bank N.A. v. Louis*, No. 15-CV-597, 2016 WL 3552143, at *10 (S.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4059214 (S.D.N.Y. July 28, 2016). The Note provides that in the event of default, "the Noteholder will have the right to be paid back by [Morris] for all of its costs and expenses in enforcing this Note, . . . includ[ing], for example, reasonable attorneys' fees." Note ¶ 7(E), Dkt. 1-5. The Mortgage provides: "In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements . . . and will have the right to add all reasonable attorneys' fees to the amount [Morris] owe[s] Lender[.]" Mortgage ¶ 22, Dkt. 1-6. Accordingly, plaintiff is entitled to recover reasonable attorneys' fees resulting from the foreclosure proceeding and defendant Morris' default.

Plaintiff seeks $230 per attorney hour worked for a total of 72 hours, and a flat rate of $500 for one court appearance. Att'y Fee Decl. ¶ 7. Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). Attorneys' fees awarded in the Eastern District of New York for cases concerning

mortgages and promissory notes "have tended to be lower than in other cases." *Beach*, 2014 WL 923151, at *13.

Plaintiff has submitted an affidavit and supplemental declaration in support of its application for attorneys' fees and costs. Dkts. 23-19, 28-1. The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010). "Descriptions of work recollected in tranquility days or weeks later will not do." *Id.* "The contemporaneous time records requirement is strictly enforced[.]" *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *7 (E.D.N.Y. Aug. 31, 2016).

In response to the Court's order directing plaintiff to supplement its application for attorneys' fees, plaintiff identifies three attorneys who billed time, Michael Gargiulo, Shauna DeLuca, and Danielle Light. Dkt. 28-1 ¶¶ 4–6. Michael Gargiulo, an associate at Hasbani & Light, P.C., was "admitted before this court on April 8, 2025." *Id.* ¶ 4. Shauna DeLuca, a partner at Hasbani & Light, P.C., was "admitted before this court on September 208, 2025." *Id.* ¶ 5. Danielle Light, a partner at Hasbani & Light, P.C., was "admitted before this court on November 9, 2012." *Id.* ¶ 6.

Plaintiff seeks to recover $17,060 for 72 hours of work at a billing rate of $230 per hour and a flat rate of $500 for one court appearance. Att'y Fee Decl. ¶ 7. Applying the forum rule, the Court finds plaintiff's counsel's hourly rate reasonable for all three attorneys. *See Prime*

*Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 550 (E.D.N.Y. 2025*)* (noting that "[t]he Eastern District of New York has held that [i]n this district, hourly rates generally range from $300.00 to $450.00 for partner-level attorneys" (internal quotation marks and citation omitted)).

Plaintiff requests fees for 72 hours of work by attorneys at Hasbani & Light, P.C. "To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429, 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox. Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)). Plaintiff has submitted contemporaneous time records detailing the type of work performed, the hours spent, and the attorney who performed the work. Dkt. 28-1.

Based on plaintiff counsel's experience and expertise as well as the level of complexity involved in a motion for default judgment, the Court finds the 72 hours requested to be excessive. First, plaintiff's records show 55.4 hours billed by Michael Gargiulo, 1.8 hours billed by Shauna DeLuca, and 1.7 hours billed by Danielle Light, for a total of 58.9 hours, not 72 hours as requested in plaintiff's original application for attorneys' fees. *See* Dkts. 28-1, 23-19. Plaintiff's counsel does not explain the discrepancy. 58.9 hours spent on a foreclosure default judgment is much higher than the hours found reasonable by courts in this district. *See*, *e.g.*, *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-00878, 2014 WL 1515643, at *5 (E.D.N.Y. Apr. 18, 2014) (finding 17.5 hours spent on a foreclosure default reasonable); *Blue Castle (Cayman) Ltd. v. Astudillo*, No. 23 CV 3851, 2024 WL 3813309, at *8 (E.D.N.Y. July 26, 2024) (30.6 hours);

*US Alliance Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023) (26.8 hours).

Further, plaintiff's original application for attorneys' fees included a request for .1 hours spent on communications with opposing counsel. Dkt. 23-19 at ECF page 6. No opposing counsel has filed a notice of appearance in this case on behalf of defendants. Moreover, plaintiff's request includes the following administrative tasks that are similar to work that Courts in this Circuit have found to be non-compensable: (1) conference with paralegal regarding service; (2) multiple instances of reviewing the docket; (3) communications with process server; (4) telephone call with private investigator; (5) emails to loan servicers; (6) drafting a notice of appearance; (7) review of affidavits of service; and (8) an entry that only lists defendant Morris' address. *See generally* Dkt. 28-1; *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008) (affirming district court's determination that time "spent on administrative tasks should not be compensated at all"); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2020 WL 7647178, at *5 (S.D.N.Y. Dec. 23, 2020) (reducing plaintiff's hours for vague billing records and to adjust for non-compensable tasks because "a court may exclude time spent by attorneys on 'less skilled work, like filing and other administrative tasks'" (quoting *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), *aff'd sub nom.* 487 F. App'x 619 (2d Cir. 2012))); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *9 (E.D.N.Y. Sept. 25, 2013) (declining to award fees for time spent on "communicating with the process server, filing documents with the court, scheduling depositions, and other related [administrative] tasks"); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (collecting cases and noting that "[c]ourts of this Circuit

have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients").

In balancing the above considerations—plaintiff's fee request is relatively high, includes errors in calculating the fee application, and includes non-compensable administrative tasks—the Court reduces plaintiff's hours by 10 percent. *See H.C. v. New York City Dep't of Educ.,* 71 F.4th 120, 126 (2d Cir. 2023) ("[T]he district court also has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (internal quotation marks and citation omitted)); *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534, 2020 WL 423422, at *5 (E.D.N.Y. Jan. 27, 2020) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." (internal quotation marks and citation omitted)); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354, 2021 WL 2188280, at *16 (E.D.N.Y. Feb. 12, 2021) (reducing attorneys' fee award by 20 percent to account for duplicative work as well as billing for "work that could reasonably have been performed by a paralegal professional or administrative assistant" such as "one hour preparing proofs of service and filing such proofs with the court" and 0.3 hours for filing of motions), *report and recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); *see also Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) (finding no error where district court reduced attorneys' fee award to account for clerical tasks performed by attorney); *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 125 (E.D.N.Y. 2023) (deducting 10 percent from requested attorneys' fees because it "was unreasonable that [the plaintiffs'] counsel could not litigate [the] case more efficiently" and to account for "numerous errors").

Accordingly, the Court recommends awarding plaintiff **$12,692.30** in attorneys' fees, which represents 58.9 total hours reduced by 10 percent to 53.01 hours multiplied by the reasonable hourly rate of $230, plus a $500 flat-rate fee for one court appearance.

Plaintiff also seeks an additional $4,359.96 for costs in this action, including the Court's filing fee of $405, $2,544.83 in service of process fees, $122.63 in postage costs for mailing documents, a $400 foreclosure report fee, and a $887.50 private investigator fee for research. *See* Att'y Fee Decl. at Dkt. 23-19 at ECF page 7.

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998); *see also 1st Bridge LLC v. 682 Jamaica Ave.*, LLC, No. 08-CV-3401, 2010 WL 4608326, at *6 (E.D.N.Y. July 13), *adopted by*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010). As discussed above, the Mortgage permits plaintiff to "collect all costs and disbursements" in an action for foreclosure and sale. Mortgage ¶ 22.

The docket reflects that Plaintiff paid $405 to file this lawsuit, which is adequate proof to recommend an award of same. *See BH99 Realty, LLC*, 2011 WL 1841530, at *8. In response to the Court's Order directing plaintiff to supplement its application for costs, plaintiff submitted documentation to support an award of $36.05 for the Notice of Pendency, $887.50 in private investigator fees, a $400 foreclosure report fee, $1,888.00 in service of process fees, and $53.71 in mailing costs. Dkt. 28-1 at ECF pages 26–39. Plaintiff has not substantiated the other costs allegedly incurred. Accordingly, this Court recommends awarding plaintiff **$3,670.26** in costs.

## VII. Judgment of Foreclosure and Sale and Appointment of Referee

Plaintiff requests appointment of a referee to effectuate a sale of the mortgaged property and to disburse the funds from such sale, pursuant to RPAPL § 1611. *See* [Prop.] J. of

Foreclosure and Sale, Dkt. 23-7. Specifically, plaintiff requests that the Subject Property be sold as one parcel. *See id.*; Pl.'s Mem. at 16.

A plaintiff is entitled to foreclose upon and sell a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation." *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401, 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010) (internal citation omitted), *report and recommendation adopted*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010); *see also OneWest Bank N.A. v. Cole*, No. 14-CV-3078, 2015 WL 4429014, at *1 (E.D.N.Y. July 17, 2015) (authorizing foreclosure and sale of property upon entry of default judgment). Courts routinely appoint referees to effectuate the sale of foreclosed properties. *See, e.g., PMB Tech. Servs., LLC v. Mazoureix*, No. 14-CV-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sept. 23, 2015) (awarding a judgment of foreclosure and sale under the supervision of a referee); *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *1 (E.D.N.Y. Apr. 18, 2014). Because plaintiff has established its presumptive right to foreclose upon the Subject Property due to defendants' default, the Court recommends that a judgment of foreclosure be entered and that a referee be appointed to effectuate the sale of the Subject Property largely under the terms set forth in the proposed Judgment of Foreclosure and Sale, Dkt. 23-7.[4]

[4] Plaintiff does not identify the referee it seeks to have appointed. *See* [Prop.] Judgment of Foreclosure and Sale, Dkt. 23-7. However, on page 2 of the proposed Judgment of Foreclosure and Sale, plaintiff erroneously makes a reference to the Magistrate Judge as the Referee. Further, on page 6, plaintiff erroneously refers to "defendant MANUEL GUEVARA" who is not a party to this action. Unless otherwise ordered by the Court, within three days of approval of plaintiff's motion for default judgment, plaintiff shall submit a revised proposed Judgment of Foreclosure and Sale that corrects these errors.

## VIII. Removing John Doe Defendants

Plaintiff seeks to remove defendants John Doe and Jane Doe (the "Doe defendants") from this action. *See* Dkt. 28. Plaintiff commenced the action against the Doe defendants, "being the tenants, occupants, persons, or corporation, if any, having or claiming an interest in or lien upon the Property." Compl. ¶ 9. On January 9, 2025, plaintiff personally served the Summons and Complaint on an individual "Mark Williams S/H/A John Doe #1" at the Subject Property. Dkt. 5. In response to the Court's Order directing plaintiff to notify the Court as to how it would like to proceed against the Doe defendants, *see* Order dated July 24, 2026, plaintiff reported that in trying to locate defendant Morris, plaintiff's private investigator encountered several individuals claiming to reside at the Subject Property. Dkt. 28 at 1. Plaintiff alleges that, upon information and belief by the data obtained by plaintiff's private investigator, no such individual named Mark Williams resides at the Subject Property. *Id.* Any communication with such individual named Mark Williams at the Subject Property was an attempt to serve defendant Morris. *Id.* Plaintiff alleges that "there are no Doe Defendants" and that the Doe defendants should therefore "be dropped from the caption." *Id.*

In this case, since plaintiff does not seek to substitute new named defendants, but only seeks to dismiss the unidentified Doe defendants, the Court respectfully recommends that the action against Defendants "John Doe" and "Jane Doe" be dismissed without prejudice. *See OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656, 2015 WL 5706945, at *12 (E.D.N.Y. Sept. 2, 2015), *report and recommendation adopted*, No. 14-CV-4656, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015) (noting there was no need to amend the caption when plaintiff requested to discontinue the action against the John Doe defendants); *East Savings Bank, FSB v. Rabito*, No. 11-CV-2501, 2012 WL 3544755, at *3–4 (E.D.N.Y. Aug. 16, 2012) (granting motion to amend

caption when John Doe defendants were replaced with named defendants believed to be tenants at mortgaged property and discontinuing action against the remaining John Doe defendants).

## Conclusion

For the foregoing reasons, this Court respectfully recommends granting plaintiff's motion for default judgment against defendants Yolanda Morris, City of New York Environmental Control Board, City of New York Department of Transportation Parking Violations Bureau, New York State Department of Taxation and Finance, Unifund CCR, LLC, and MOOI River LLC, and further recommends entry of a final judgment awarding damages as follows:

(1) **$302,883.89** in unpaid principal;

(2) **$42,406** in interest from May 1, 2019 through September 15, 2025, plus additional interest at the rate of **$18.20** per day from September 16, 2025 until the entry of judgment;

(3) **$24,769.54** in escrow advances and **$698** in disbursements (*i.e.*, property inspection costs); **$483.30** in unpaid late fees; and

(4) **$12,692.30** in attorneys' fees and **$3,670.26** in costs.

This Court further recommends the appointment of a referee to conduct the foreclosure and sale of the Property largely under the terms set forth in the proposed Judgment of Foreclosure and Sale (Dkt. 23-7). Finally, the Court recommends that the claims brought against "John Doe" and "Jane Doe" be dismissed.

Any objections to the recommendations made in this Report must be filed with the Honorable Natasha C. Merle within 14 days after the filing of this Report and Recommendation and, in any event, on or before **August 21, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former

ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, by **August 12, 2026**, the Court directs plaintiff's counsel to serve on defendants a copy of this Report and Recommendation by overnight mail and first-class mail at the addresses below, and to file proof of service on ECF:

Yolanda Morris
219-22 141st Road
Springfield Gardens, N.Y. 11413

City of New York Environmental Control Board
59-17 Junction Boulevard
Corona, N.Y. 11369

City of New York
Department of Transportation Parking Violations Bureau
100 Church Street
New York, N.Y. 10007

New York State Department of Taxation and Finance
W.A. Harriman Campus, Building 9
Albany, N.Y. 12227

Unifund CCR, LLC
10625 Techwoods Circle
Cincinnati, O.H. 45242

MOOI River LLC
760 Rocking Horse Road
Vista, C.A. 92808

**SO ORDERED**

Dated: Brooklyn, New York
August 7, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge